**JUPITER ALUMINUM CORPORATION,**
**Plaintiff,**

v.

**THE HOME INSURANCE COMPANY and The Hartford Steam Boiler Inspection and Insurance Company, Defendants.**

No. 96 C 3060.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 24, 1998.

Carson P. Veach, Seyfarth, Shaw, Fairweather & Geraldson, Herbert I. Rothbart, Chicago, IL, for Jupiter Aluminum Corp.

Thomas Bernard Keegan, Edward William Gleason, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Home Insurance Company and Hartford Steam Boiler Inspection and Insurance Company.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

On April 22, 1996, plaintiff Jupiter Aluminum Corporation, an Illinois corporation, filed a complaint against defendants, The Home Insurance Company, a New Hampshire corporation, and The Hartford Steam Boiler Inspection and Insurance Company, a Connecticut corporation, in the Circuit Court of Cook County, Illinois, seeking a declaratory judgment vacating an arbitrator's insurance award pursuant to § 112 of the Uniform Arbitration Act, 710 ILCS 5/12(b) (1992). Plaintiff alleges that the award should be vacated because: (1) plaintiff at all times was operating under the belief that the procedure leading to the award was a nonbinding procedure; and (2) even if binding, the arbitrator exceeded his authority, was not neutral, wholly ignored the evidence and applicable law, and was arbitrary and capricious in his determination of the award.

On May 22, 1996, defendants removed the case to this court pursuant to Title 28 U.S.C.

§ 1332(a)(1). On September 20, 1996, defendants filed an answer to the complaint. On January 21, 1998, plaintiffs filed an amended complaint, adding a count seeking damages. Defendants filed an answer and counterclaim for damages. Plaintiff has moved to dismiss the counterclaim, arguing that under Fed. R.Civ.P. 13, it is a compulsory counterclaim that defendants were required to file when they answered plaintiff's original complaint. Defendants argue that the counterclaim is not compulsory and, in the alternative, have moved for leave to file the counterclaim. For the reasons set forth below, plaintiff's motion to dismiss counterclaim is denied and defendants' motion for leave to file counterclaim is granted.

## FACTS

On or about March 17, 1993, plaintiff suffered a loss at its Hammond, Indiana plant. At that time, plaintiff was covered by an insurance policy issued by defendants for damage to machinery and for business interruption, and filed a claim with defendants. Defendants agreed to pay plaintiff for the property damage portion of the claim but the parties could not agree on the full extent of the business interruption coverage available to plaintiff under the policy. As a result, both parties retained appraisers, who also could not agree on the extent of the coverage. Nevertheless, in or about November 1993, defendant paid plaintiff $100,000, presumably as partial payment for the loss.

In July 1994, plaintiff filed a formal proof of loss with defendants and demanded a formal appraisal as required by the insurance policy. Defendants agreed to participate, and subsequently an umpire was selected to which both parties submitted their appraisal reports. On January 9, 1996, the umpire issued an award that was less than the estimate of loss by either parties' appraisers.

Plaintiff refused to accept the umpire's award and filed this lawsuit on April 22, 1996, seeking to vacate the award. Defendants answered this complaint but did not file a counterclaim. Plaintiff amended the complaint on January 1, 1998, adding a count seeking $640,000 in damages to cover its loss allegedly covered by the insurance policy.

On February 17, 1998, defendant answered the amended complaint and, for the first time, filed a counterclaim for unjust enrichment seeking $33,895, the amount it paid plaintiff in excess of the umpire's award.

## DISCUSSION

### I. Compulsory Counterclaims

Fed.R.Civ.P. 13(a) provides that a counterclaim is compulsory if: (1) "if it arises out of the transaction or occurrence that is the subject of the opposing party's claim"; and (2) it existed at the time the pleading was filed.

### A. Transaction or Occurrence

Concerning the first element required by Rule 13(a), courts usually interpret the meaning of the phrase "transaction or occurrence" liberally to further the policies of the Federal Rules in general, and Rule 13(a) in particular. See Warshawsky & Co. v. Arcata National Corp., 552 F.2d 1257, 1261 (7th Cir.1977); 6 Wright, Miller & Kane, Federal Practice & Procedure 50 (2d ed.1990). The most accepted method for determining whether a claim arises out of the same transaction or occurrence as the first claim is the logical relationship test: whether the subject matter of the two claims are logically related. See Colonial Penn Life Insurance Co. v. Hallmark Insurance Administrators, Inc., 31 F.3d 445, 448 (7th Cir.1994); Burlington Northern Railroad Co. v. Strong, 907 F.2d 707, 711 (7th Cir.1990); Computer Assocs. Int'l Inc. v. Altai, Inc., 893 F.2d 26, 29 (2d Cir.1990); Savarese v. Agriss, 883 F.2d 1194, 1208 (3d Cir.1989); 6 Wright, Miller & Kane 58. The purpose of Rule 13(a) is to prevent multiplicity of actions and to resolve all disputes arising out of common matters in a single lawsuit. Southern Construction Co. v. Pickard, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); Warshawsky & Co., 552 F.2d at 1261.

In Burlington, the Seventh Circuit acknowledged the flexibility of the term "transaction," noting that it could encompass a series of many occurrences which may not necessarily be immediately connected. 907 F.2d at 711. At the same time, it warned

that the facts of each case should be given careful consideration before a determination is made:

> In short, there is no formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds. *Id.*

In the instant case, defendants contend that plaintiff's original complaint and defendants' counterclaim are based on different theories and would raise different legal and factual issues because, in part, plaintiff's claim arises under the Uniform Arbitration Act while defendants' claim is based on the insurance policy. Defendants are correct that the Seventh Circuit has considered differing facts and legal theories in determining whether that counterclaims were not compulsory. However, in the cases cited by defendants, the court also considered factors such as whether the claims arose from different documents that were "totally unrelated" (*See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 397 (7th Cir.1986)), or that the connection was "so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)." *Burlington,* 907 F.2d at 711, quoting *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir.1980), rev'd on other grounds, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

■ In contrast, in the instant case the original complaint and the counterclaim arise out of the same basic set of facts. Plaintiff is seeking declaratory relief vacating the umpire's award, and defendant is essentially seeking enforcement of that award by seeking return of the amount of money already paid to plaintiff which exceeded it. The facts of the underlying insurance claim and the arbitration hearing are relevant to both of these claims. As such, the goal of judicial economy would be served by the concurrent adjudication of these issues. Accordingly, this court finds that the plaintiff's original complaint and defendants' counterclaim are logically related for purposes of Rule 13(a).

B. *Existence of counterclaim at the time of pleading*

■ Defendants also contend that their counterclaim for unjust enrichment was not "mature" at the time plaintiff's complaint was filed and therefore falls under one of the exceptions to compulsory counterclaims provided in Rule 13(a). A party need not assert a counterclaim that has not matured at the time he serves his pleading, even if it arises out of the same transaction or occurrence as plaintiff's claim. *See Harbor Insurance Co. v. Continental Bank Corp.,* 922 F.2d 357, 361 (7th Cir.1990); 6 Wright, Miller & Kane 80–81. An illustration of this exception is a claim that depends on the outcome of another lawsuit and therefore does not come into existence until that lawsuit is completed. *Id.* at 82. For example, in *Burlington,* the plaintiff sued his employer for personal injury damages and was awarded $73,000. 907 F.2d at 708–09. Thereafter, the employer moved to set off a portion of the judgment representing the amount the employer's disability insurance had previously paid to plaintiff. *Id.* The court found that the employer's claim was not mature at the time of plaintiff's complaint. *Id.* at 712.

■ Defendants wish to invoke this same exception in the instant case. The counterclaim in this case, unlike *Burlington,* did not depend on the outcome of any other lawsuit. The employer-defendant in *Burlington* was not disputing that the money paid from the disability insurance fund was owed to the plaintiff; it simply did not want to pay him twice. This "double payment" situation came into existence only *after* the plaintiff was awarded the $73,000. In the instant case, however, defendants' counterclaim existed *before* plaintiff filed its original complaint. As a practical matter, it existed the moment the umpire awarded plaintiff an amount that was less than defendants had already paid to plaintiff. Further, defendants' counterclaim did not depend on the outcome of plaintiff's complaint. If defendants succeed and the award is upheld, their counterclaim can and should be decided in the same action. Either way, both disputes can and should be resolved in the same judicial proceeding, thus fulfilling the goal of Rule 13. Because defen-

dants' counterclaim arose out of the same transaction as plaintiff's original complaint and existed when that complaint was filed, this court concludes that it is a compulsory counterclaim.

## II. *Leave to Amend*

■ Even if a counterclaim is compulsory, however, the court may allow an amendment under Fed.R.Civ.P. 13(f), which provides:

When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

■ Similarly, Fed.R.Civ.P. 15(a) allows parties to amend their pleadings and provides that this leave "shall be freely given when justice requires." Courts have interpreted these rules liberally, in furtherance of the goal of the Federal Rules to resolve disputes on the merits and in a single judicial proceeding whenever possible. *See Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 220 (5th Cir.1975); *Welsh & Katz, Ltd. v. Thornton–Trump,* 1992 WL 77761, *2 (N.D.Ill.1992). The argument for amendment is especially compelling where the claim is compulsory. *Spartan,* 517 F.2d at 220. An amendment should not be denied merely due to the passage of time between the original filing and the attempted amendment. *Id.*

Moreover, amendments should be allowed in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party...futility of the amendment, etc...." *Foman,* 371 U.S. at 182, 83 S.Ct. 227. *See also Welsh & Katz, Ltd.* at *2. None of these factors are present in the instant case. Plaintiff has failed to demonstrate that it would be prejudiced by the filing of defendants' counterclaim. The counterclaim is based on the same set of facts as plaintiff's complaint and it does not appear that additional discovery would be required if the counterclaim is filed. Accordingly, plaintiff's motion to dismiss defendants' counterclaim is denied and defendants'

motion for leave to file counterclaim is granted.